IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAORLINA
STATESVILLE DIVISION
CASE NO.: 5:12-cv-00016-RLV-DSC

| | |
|---|---|
| HAROLD N. ORBAN, and <br> VICTORIA L. ORBAN, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONWIDE TRUSTEE SERVICES, INC., <br> KERRIE A. VERSTRATE, BANK OF <br> AMERICA, and BANK OF NEW YORK MELLON <br> f/k/a BANK OF NEW YORK, SUCCESSOR <br> TO JP MORGAN CHASE BANK, N.A., AS <br> TRUSTEE FOR THE CERTIFICATE <br> HOLDERS OF CWHEQ, INC., REVOLVING HOME <br> EQUITY LOAN ASSET-BACKED NOTES SERIES <br> 2006-I <br><br> Defendants. | MEMORANDUM & ORDER |

**THIS MATTER** is before the Court upon Defendants Bank of America, N.A. ("BANA") and Bank of New York Mellon's ("BNYM") joint Motion to Dismiss, filed on February 9, 2012 (Doc. 2); Defendants Nationwide Trustee Services, Inc. ("Nationwide Services") and Kerrie A. Verstrate's ("Verstrate") joint Motion to Dismiss, filed on February 13, 2012 (Doc. 3); *pro se* Plaintiffs Harold N. Orban and Victoria L. Orban's (collectively, "the Orbans") Motion for Summary Judgment, filed on May 4, 2012. (Doc. 21.)

I.  BACKGROUND

    A.  Procedural Background

This matter was originally filed in the Superior Court of Catawba County, North Carolina on January 6, 2012. (Doc. 1-1). On February 7, 2012, BANA filed a Notice of Removal to this Court under 28 U.S.C. §§ 1331, 1367, 1441, and 1446. (Doc. 1). Co-Defendants BNYM,

Nationwide Services, and Verstrate all consented to removal. (Doc. Pg. 2 ¶ 3). Removal is proper under 28 U.S.C. § 1331 federal question jurisdiction because the Orbans have alleged violations under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, and the Real Estate Settlement Procedure Act, 12 U.S.C. § 2601, *et seq.*[1] (Doc. 1-1, ¶¶ 7, 17, 18). This Court exercises its supplemental jurisdiction over the state law claims as they make up the same case and controversy of the alleged violations of federal law. 28 U.S.C. § 1367(a).

On March 5, 2012, the Orbans objected to removal and moved to remand the case. (Doc. 9). The Orbans argued that mere consent of every Defendant to removal was not enough and that 28 U.S.C. § 1446(b) required each Defendant to either join in the removal petition or file a removal action of their own. (Doc. 9, Pg. 3, ¶ 5). On March 31, 2014, this Court denied the Motion to Remand under the Fourth Circuit's holding in *Mayo v. Bd. of Educ. of Prince George's Cnty.*, 713 F.3d 735, 742 (4th Cir. 2013) *cert. denied,* 134 S. Ct. 901, 187 L. Ed. 2d 777 (U.S. 2014) ("[a]ccordingly. we conclude that a notice of removal signed and filed by an attorney for one defendant representing unambiguously that the other defendants consent to the removal satisfies the requirement of unanimous consent for purposes of removal."))

### A. Factual Background

On December 13, 2006, the Orbans executed a Home Equity Credit Line Agreement and Disclosure Statement (the "note" or "HELOC" – Home Equity Line of Credit). (Doc. 4-1, Pg. 2). Pursuant to the note, a deed of trust was filed with the Catawba County Register of Deeds at book 2802, page 984, loan no. 155552421. (Doc. 4-1).[2] The line of credit was for a maximum of

---

[1] The Court will sometimes refer to these federal statutes by their commonly known acronyms, FDCPA and RESPA, respectively.

[2] In addition to this loan, Plaintiffs entered into a first mortgage representing loan no. 155552429, which plaintiffs declare is "not the subject of this action." (Doc. 1-1, ¶ 17).

$200,000.00, and was secured by a mortgage on the premises located at 2320 Bluestone Court, Sherills Ford, North Carolina ("the Property"). *Id.* The deed of trust lists "Trustee Services of Carolina, LLC" as the trustee, acting for the beneficiary, Mortgage Electronic Registration Systems, Inc. ("MERS"). *Id.* The deed of trust states that MERS is acting solely as nominee for the lender, America's Wholesale Lender, and its successors and assigns. *Id*.

A document signed on June 17, 2011, filed in Catawba County on July 18, 2011 at book 3083, page 1932, but with a stated effective date of on or before May 6, 2010, provides that MERS assigned the Deed of Trust to "THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS INDENTURE TRUSTEE FOR THE NOTEHOLDERS OF CWHEQ, INC., REVOLVING HOME EQUITY LOAN ASSET-BACKED NOTES, SERIES 2006-I" ("BNYM"). (Doc. 4-2). This document is signed by Mercedes Judilla as assistant secretary of MERS. *Id.*

A document entitled "Appointment of Substitute Trustee" signed on June 21, 2010, and filed in Catawba County on June 24, 2010, provides that BNYM removed the original trustee, Trustee Services of Carolina, LLC, and appointed Nationwide Services, Wendy B. Cole, Matressa Morris, and Defendant Verstrate as substitute trustees. (Doc. 4-3).

On or about September 24, 2010, Nationwide Services and Verstrate filed a foreclosure action on the HELOC loan in the office of the Catawba County Clerk of Superior Court, case No. 10-SP-947. On July 7, 2011, the action was dismissed pursuant to N.C.G.S 1A-1 Rule 41(b), for failure to prosecute. (Doc. 101, Ex. H).

The Court will now discuss correspondence between the Orbans and Defendants which underlies the Orbans' claims. These instances of correspondence were attached to the Complaint and are presented here in chronological order.

On January 21, 2011, the Orbans sent a letter to BANA[3] entitled, QUALIFIED WRITTEN REQUEST ("QWR").[4] (Doc. 1-1, Ex. B at 18). This letter referred to two mortgages[5] on the Property with account numbers 155552421 and 155552429. (*Id.*) This letter requested that specific information[6] be provided and the Orbans claimed that they had a right to be provided this information under N.C.G.S. § 45-93, 12 U.S.C. § 2601, and the Truth in Lending Act, 15 U.S.C. § 1601 *et seq*. ("TILA"). (*Id.* at 18-19).

On the same day, January 21, 2014, the Orbans sent a similar letter to Nationwide Services and Verstrate. (Doc. 1-1, Ex. F). This letter differed in that it specifically referred to the second mortgage on the Property with the account number 155552429. The references to state and federal statutes and requests for information made in this letter were identical to those made in the QWR to BANA.

Nineteen business days later, on February 16, 2011, the Orbans sent another letter to Nationwide Services and Verstrate. (Doc. 1-1, Ex. G). This letter, entitled "NOTICE OF DEFAULT," refers to "foreclosure action 10-SP-947." (*Id.*). The letter referenced the previously mailed QWR and alleges that Nationwide Services and Verstrate are in default[7] for failure to comply with N.C.G.S § 45-93, RESPA, and TILA.

---

[3] BANA is the servicer of the loan at issue.

[4] This term has a statutory definition at 12 U.S.C. § 2605(e)(1)(B).

[5] In North Carolina, deeds of trust are normally used in secured real property transactions, which are nevertheless sometimes referred to as "mortgages."

[6] The information requested was: 1) name and address of holder in due course of note and deed of trust at issue in Catawba County, North Carolina; 2) documents establishing the full chain of custody of the note and deed of trust; 3) contact information for the servicer representative with authority to answer questions and resolve disputes; 4) copies of the note(s) and deed(s) of trust at issue; and, 5) complete statement of the payment history and all fees and charges assessed under the loan transaction at issue for a two year period preceding the request. (Doc. 1-1, Ex. B).

[7] ". . . this Notice of Default will be filed in [Catawba County Clerk of Superior Court case number 10-SP-947] to let all parties and the Court know that you are in violation of both State and federal law, are in default for failing to respond within the statutory time periods, and that you have failed to show that you are authorized in any way shape

On April 5, 2011, the Orbans received a letter from BAC Home Loans[8] responding to the January 21 and February 16 letters sent by the Orbans. (Doc. 1-1, Ex. C at 20). This letter from BAC Home Loans referenced a number of enclosures providing some of the information requested by the Orbans. The letter refused to provide part of the information requested by the Orbans, characterizing the denied requests as beyond the scope of the cited statutory provisions, overly broad, not related to payment/disbursement of funds, and inappropriate as the Orbans have made "no allegations whatsoever of any wrongdoing by BAC Home Loans." (Doc. 1-1, Ex. C, Pg. 21). Paragraph five of this letter provides the names and addresses of the current holders of the two Notes. (*Id.*)[9] [10] The letter concluded by providing points of contact for general foreclosure matters and specific foreclosure matters. (*Id.*)[11]

On April 5, 2011, Mr. Orban sent another QWR to BNYM referencing the loan identified with the account number 155552429. (Doc. 1-1, Ex. D). This letter requested information similar to that requested in previous QWR's. (See *supra* footnote 2). Twenty-nine business days later, on

---

or form to initiate a foreclosure action regarding the second mortgage [account number 155552429] on [the Property]." (Doc. 101, Ex. G, Pg. 29-30).

[8] This letter was from BAC Home Loans, a subsidiary of BANA. The letter was written by Paula Ryan-Apuzzo, who is a "Litigation Specialist" in the Bankruptcy and Foreclosure Servicing Qualified Written Request Group. (Doc. 1-1, Ex. C).

[9] First Lien: The Bank of New York Mellon, fka the Bank of New York, as Indenture trustee for the Note Holders of CWHEQ, INC., Revolving Home Equity Loan Asset-backed Notes, Series 2006-I at 226 West Monrow Street, 26 Floor, Chicago, IL 60670.

[10] Note for the HELOC: BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP, for the benefit of UBS Stabfun Residential Mortgage Trust at 6526W Campus Oval 200, New Albany, OH 43054.

[11] The contact information for general foreclosure matters was listed as: "Lisa Avital at (866) 200-9624, Option1, whose address is 400 National Way, Simi Valley, CA 93065." (Doc. 1-1, Ex. C at 21.) The contact information for specific foreclosure matters was listed as: "Johnston & Freeman, LLC at (770) 234-9181, as this firm represents BAC Home Loans in your clients' foreclosure case." (*Id.*)

May 14, 2011, Mr. Orban sent another "NOTICE OF DEFAULT" to BNYM for failure to respond to this QWR.[12] (Doc. 1-1, Ex. E).

At the outset, it is important to construe what claims Plaintiffs are bringing. In Count One, Plaintiffs appear to bring claims arguing that the foreclosure was wrongful because the deed of trust made from MERS to BNYM was improper, that BANA violated North Carolina General Statute Section 45-93, and that BANA, Nationwide Services, and Verstrate violated provisions of the FDCPA. In Count Two, Plaintiffs are bringing a breach of a loan modification agreement against BANA. They also allege that BANA violated RESPA along with North Carolina General Statute 75-54. Elsewhere, Plaintiffs alleged that Defendants have committed fraud, request injunctive relief, emotional distress damages, and punitive damages.

## II. STANDARD OF REVIEW

BANA, BNYM, Nationwide Services, and Verstrate have moved to dismiss the Orbans' claims under Rule 12(b)(6). (Doc. 2 at 1); (Doc. 3 at 3). Additionally, Verstrate has moved to dismiss the Orbans' claim under Rule 12(b)(5) for insufficient service of process, which will be discussed in the "ANALYSIS" section. (Doc. 3 at 3.)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N. Carolina v. Martin*, 980 F. 2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

---

[12] In this Notice of Default, Mr. Orban states that he sent the QWR to BNYM's address of record instead of the Chicago address provided by BAC Home Loans in the April 5 letter sent to Mr. Orban. Mr Orban claims that the Chicago address provided is nonexistent according to the Chicago Post Office. (*See* Doc. 1-1, Ex. D, Fn. 1).

556 U.S. 662, 678 (2009)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007)). The facial plausibility standard requires "the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis v. Giacomelli*, 588 F. 3d 186, 193 (4th Cir. 2009)(quoting *Twombly*, 550 U.S. at 570.) "To emphasize the Federal Rules' requirements for stating claims that are warranted and therefore form a plausible basis for relief, the Supreme Court has held that a complaint must contain 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

Where the Plaintiff is proceeding *pro se,* the Court will construe the pleadings liberally in order to allow for the development of a potentially meritorious claim. *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (citing *Gordon v. Leeke,* 574 F. 2d 1147, 1151 (4th Cir.1978)). However, this principle is not without limits, and the proper role of the district court is that of a legitimate advisor, and not as an advocate for the plaintiff. *Beaudett v. City of Hampton*, 775 F. 2d 1274, 1278 (4th Cir. 1985)(citing *Gordon,* 574 F. 2d at 1151).

III. ANALYSIS

    A. **Service of Process**

Verstrate has moved to dismiss the Orbans' claim under Rule 12(b)(5) for insufficient service of process. (Doc. 3 at 3). Federal Rule of Civil Procedure 4(e) provides that "an individual . . . may be served in a judicial district of the United States" by "following the state law for serving a summons in an action," personally delivering the summons to the individual, leaving a copy of the summons at the individual's "dwelling or usual place of abode," or delivering a copy of the summons to an agent authorized to receive service of process. Fed. R. Civ. P. 4(e). North Carolina also allows service of summons by any of these methods provided by Rule 4(e). N.C. Gen. Stat. § 1A-1, Rule 4(j)(1)(a)-(b). Additionally, North Carolina permits

service by "mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the party to be served, and delivering to the addressee," service by designated delivery service, or service by signature confirmation as provided by the United States Postal Service. *Id.* at Rule 4(j)(1)(c)-(e).

The Orbans attempted service by mailing a copy of the summons and complaint via certified mail, return receipt requested, to "Kerrie A. Verstrate, Nationwide Trustee Servicing, Inc. 1587 Northeast Expressway, Atlanta, Georgia 30329." This attempt was insufficient because it fails to comply with federal or state law. Although intended for Verstrate, the Orbans used the address of Nationwide Services which is not Verstrate's "dwelling house or usual abode." Fed. R. Civ. P. 4(e)(2)(B); N.C. Gen. Stat. § 1A-1, Rule 4(j)(1)(a). Given that this attempted mailing was ineffective, Plaintiffs' attempted service of process could not fall under any other applicable provisions of Rule 4. Plaintiffs did not personally deliver the summons, leave a copy at Vestrate's usual place of abode, or otherwise deliver a copy to an agent authorized to receive process.

Therefore, Verstrate's Motion to Dismiss under Rule 12(b)(5) is granted.

### B. Count One

The Orbans' claims in Count One are based on allegations that the assignment of the deed of trust from MERS to BNYM was improper, that Nationwide Services and Verstrate filed a foreclosure action without lawful authority, and that BANA provided a false address to the Orbans. (Doc. 1-1, at 7-8, ¶¶ 11-14.) The Orbans claim that these alleged acts constitute fraud and violated N.C. Gen. Stat. § 45-93 and the FDCPA. The claims in Count One will be dismissed for the following reasons.

1. Assignment of the Deed of Trust and Foreclosure Action

The assignment of the note and deed of trust and subsequent appointment of substitute trustees were effective and proper under North Carolina law. N.C. Gen. Stat. § 47-17.2 states:

> It shall not be necessary in order to effect a valid assignment of a note and deed of trust, [or] mortgage . . . to record a written assignment in the office of the register of deeds in the county in which the real property is located. A transfer of the promissory note or other instrument secured by the deed of trust, mortgage, or other security interest that constitutes an effective assignment under the law of this State shall be an effective assignment of the deed of trust, mortgage, or other security instrument. The assignee of the note shall have the right to enforce all obligations contained in the promissory note or other agreement, and all the rights of the assignor in the deed of trust, mortgage, or other security instrument, *including the right to substitute the trustee named in any deed of trust*, and to exercise any power of sale contained in the instrument without restriction.

N.C. Gen. Stat. § 47-17.2 (emphasis added).

Additionally, in North Carolina it is established that the principal necessarily carries with it the accessory "without any formal assignment or deliver, or even mention, of the latter." *Jenkins v. Wilkinson*, 113 N.C. 532, 18 S.E. 696, 697 (1893) ("The debt is the principal thing; the mortgage to secure it is the incident or accessory. . . . The transfer of the note carries with it the security without any formal assignment or deliver, or even mention, of the latter.") In other words, where the note goes the deed of trust automatically follows.

Here, BNYM held the note and, regardless of alleged irregularities contained in filing of the deed of trust, the deed of trust necessarily followed with the note. *Id.* Therefore, BNYM had the authority to appoint Nationwide Services and Verstrate as substitute trustees. *See* N.C. Gen. Stat. § 41-17.2. As substitute trustees, Nationwide Services and Verstrate were lawful parties to initiate a foreclosure proceeding under the note and deed of trust. *See* N.C. Gen. Stat. § 45-21.16.

Therefore, those claims alleging wrongdoing arising from the assignment of the deed of trust and subsequent filing of the foreclosure action by Nationwide Services and Verstrate are dismissed for failing to state a claim upon which relief may be granted.[13]

2.  North Carolina General Statute Section 45-93

Section 45-93 requires servicers of home loans to "make reasonable attempts to comply with a borrower's request for information about the home loan account and to respond to any dispute initiated by the borrower about the loan account." N.C. Gen. Stat. § 45-93. Section 45-93 defines "servicer" as the person responsible for "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan." N.C. Gen. Stat. § 45-90 ("servicer" as defined by 12 U.S.C. § 2605(i)). Specifically, a servicer must, upon receipt of a written request for information from the borrower, provide the "identity, address, and other relevant information about the current holder, owner, or assignee of the loan." N.C. Gen. Stat. § 45-93(1)(c). Section 45-94 provides the remedies for a borrower in the event of a breach of Section 45-93, but also places a burden on the borrower alleging a violation:

> With the exception of an action by the Commissioner of Banks or the Attorney General, *at least 30 days before a borrower or a borrower's representative institutes a civil action for damages against a servicer for a violation of this Article, the borrower or a borrower's representative shall notify the servicer in writing of any claimed errors or disputes regarding the borrower's home loan that forms the basis of the civil action.* The notice must be sent to the address as designated on any of the servicer's bills, statements, invoices, or other written communication, and must enable the servicer to identify the name and loan account of the borrower. For purposes of this section, notice shall not include a complaint or summons.

N.C. Gen. Stat. § 45-94 (emphasis added).

---

[13] Further, any allegations relating to "wrongful foreclosure" fail to state a claim because "[a] claim for wrongful foreclosure accrues when the mortgagee conveys the property to a third party." *Patterson v. DAC Corp. of North Carolina*, 310 S.E.2d 783, 785 (N.C. Ct. App. 1984). It is evident from Plaintiffs' Complaint that the foreclosure action did not terminate in any Defendants favor. Therefore, a claim for wrongful foreclosure does not exist.

Defendant BANA is the servicer of the loan at issue and the Orbans sent a request for information dated January 21, 2011. (Doc. 1-1, Ex. B). Defendant BANA sent a reply to the Orbans dated April 5, 2011. (Doc. 1-1, Ex. C). The Orbans allege that this reply letter failed the requirements of Section 45-93 for two reasons: (1) the address provided for BNYM was incorrect; and, (2) the letter was not received within the required 10 day window to respond. However, as to BANA[14], the Orbans failed to provide notice of the alleged violations of Section 45-93 thirty days prior to instituting the present suit, as required by Section 45-94.

For this reason, the Orbans' claim against BANA for violation of Section 45-93 is dismissed for failure to state a claim upon which relief may be granted.

### 3. FDCPA

The purposes of the FDCPA are to "eliminate abusive debt collection practices by debt collectors," keep the playing field level among debt collectors, and to "promote consistent State action to protect consumers against debt collection." 15 U.S.C.A. § 1692(e). The FDCPA only applies to "debt collectors." As defined by statute[15] and prevailing case law interpreting the applicability of the statute, "creditors, mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA." *Scott v. Wells Fargo Home Mortgage Inc.,* 326 F. Supp. 2d 709, 718 (E.D. Va. 2003) *aff'd sub nom. Scott v. Wells Fargo & Co.,* 67 F. App'x 238 (4th Cir. 2003); *see also, Boyter v. Bank of Am. Corp.*, 3:12-CV-189-RJC-DCK, 2012 WL 5872793 (W.D.N.C. Oct. 9, 2012) *report and recommendation adopted*, 3:12-CV-189-RJC-DCK, 2012 WL 5872752 (W.D.N.C. Nov. 20, 2012)(quoting

---

[14] The Orbans did comply with this Section 45-94 requirement as to BNYM, (Doc. 1-1, Ex. E), and to Nationwide Services and Ms. Verstrate jointly, (Doc. 1-1, Ex. G), in the form of "Notice of Default" letters.

[15] "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15. U.S.C.A. § 1692(a)(6).

*Ruggia v. Washington Mut.*, 719 F.Supp.2d 642, 647-648 (E.D. Va. 2010) (internal citations omitted)); *Blick v. Wells Fargo Bank, N.A.*, 2012 WL 103 0137, *7 (W.D. Va. March 27, 2012) (servicer of a loan is not a "debt collector" under the FDCPA); *Warren v. Countrywide Home Loans, Inc.*, 342 Fed.Appx. 458 (11th Cir. 2009) ("several courts have held that an enforcer of a security interest, such as a mortgage company foreclosing on mortgages of real property falls outside the ambit of the FDCPA . . . ."). In the same manner, courts within the Fourth Circuit have also held that the FDCPA does not apply to a trustee. *Jesse v. Wells Fargo Home Mortgage*, 882 F. Supp. 2d 877, 879 (E.D. Va. 2012) (citing *Horvath v. Bank of New York, N.A.,* CIVA109CV01129AJTTCB, 2010 WL 538039 (E.D. Va. Jan. 29, 2010) *aff'd,* 641 F.3d 617 (4th Cir. 2011.))

Therefore, any allegations by the Orbans that BANA as the servicer of the loan or, Nationwide Services or Verstrate as trustees, violated the FDCPA are dismissed for failure to state a claim upon which relief may be granted.

### C. Count Two

The Orbans' claims in Count Two allege that BANA breached a loan modification contract, violated RESPA by failing to provide notice of a change in loan servicing of the second HELOC loan, and again allege that BANA provided false and misleading information in violation of N.C. Gen. Stat. § 75-54 and the FDCPA. (Doc. 1-1 at 8, ¶¶ 16-18.)

#### 1. Breach of Contract

The essential elements of a breach of contract claim are the (1) existence of a valid contract and (2) breach of the terms of that contract. *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000) (citing *Jackson c. California Hardwood Co.*, 120 N.C. App. 870, 871, 463 S.E.2d 571, 572 (1995)). "For a valid contract to exist there must be a 'meeting of the minds

as to all essential terms of the agreement'" *McKinnon v. CV Indus., Inc.*, 213 N.C. App. 328, 333, 713 S.E. 2d 495, 500 (2011) (citing *Carcano v. JBSS, LLC,* 200 N.C. App. 162, 168, 684 S.E. 2d 41, 48 (2009)). An "agreement" is reached when an offer by one party is accepted by the other and "all have a common understanding of the rights and obligations of the others." *Prentzas v. Prentzas*, 260 N.C. 101, 103-04, 131 S.E. 2d 678, 680-81 (1963) (citations omitted).

In support of their claim for breach of contract the Orbans allege that:

> In September 2009, Plaintiffs retained an attorney for the purpose of modifying and/or restructuring their loans with Bank of America, and in April 2010, Bank of America approved a loan modification plan. However, in November 2010, said attorney filed a complaint with the North Carolina Commissioner of Banks due to the fact that Bank of America had reneged on their part of the agreement, and for unfair and deceptive trade practices. Plaintiffs could not afford to continue to pay the attorney and do not know what, if anything, was ever done with the complaint, and although Bank of America kept Plaintiffs first loan modification payment of $2,216.94 sent along with the full loan modification package, Bank of America refused to honor their part of the arrangements.

(Doc. 1-1 at 8-9, ¶ 16.) Neither the loan modification agreement nor the complaint with the North Carolina Commissioner of Banks are attached as exhibits to any filings and the Orbans provide no additional evidence in support of their allegations for breach of contract.

Assuming the truth of the facts alleged, the Orbans have succeeded in making a claim for breach of contract. Although a copy of the contract has not been presented, the Orbans have alleged that: (1) they hired an attorney to negotiate a contract on their behalf; (2) an agreement was reached with BANA as evidenced by the processed mortgage payment from the Orbans to BANA; and, (3) the agreement was breached by BANA. Review under Rule 12(b)(6) is only concerned with the sufficiency of the complaint and these allegations are sufficient for a claim against BANA for breach of contract. *Republican Party of N. Carolina*, 980 F.2d at 952 ("[a] motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does

not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.").

Therefore, BANA's motion to dismiss the Orbans' claim for breach of contract under Rule 12(b)(6) is denied.

## 2. RESPA

RESPA applies to loans "secured by a first or subordinate lien on residential real property." 12 U.S.C. § 2602(1)(A). The purpose of RESPA is to "insure that consumers throughout the Nation are . . . protected from . . . abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601. To achieve this purpose, RESPA requires "[e]ach servicer of any federally related mortgage loan" to "notify the borrower in writing of any assignment, sale, or transfer of the *servicing of the loan* to any other person." 12 U.S.C. § 2605(b)(1) (emphasis added). In an action by an individual for violation of RESPA, recovery is limited to "any actual damages" and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance." 12 U.S.C. § 2605(f)(1).

Here, the Orbans admit in the Complaint that they were provided notice of a change in loan servicing of their second HELOC loan in conformance with RESPA.[16] (Doc. 1-1 at 9, ¶ 17.) Furthermore, the Orbans' have made no showing of resulting actual damages nor have they alleged a pattern or practice of noncompliance by BANA.

Therefore, those claims alleging violations of RESPA by BANA are dismissed for failing to state a claim upon which relief may be granted.

---

[16] The Orbans state: "[h]owever, a letter dated 12 August 2011 from a company called "Real Time Resolution" states in relevant part that, ". . . the collection duties associated with your mortgage loan [#155552421] . . . is being transferred from Countrywide Home Loans (BoA) to REAL TIME RESOLUTION, INC. effective 08.11.2011." (Doc. 1-1 at 9, ¶ 17.)

3. N.C. Gen. Stat. § 75-54 and FDCPA

North Carolina General Statute § 75-54 provides that "[n]o debt collector[17] shall collect or attempt to collect a debt or obtain information concerning a consumer by any fraudulent, deceptive or misleading representation." N.C. Gen. Stat. § 75-54. Analysis under the Section 75-54 is a two-step process with three elements to be satisfied at each step. "[T]hree threshold determinations must be satisfied" at step one: (1) the obligation owed must be a debt; (2) the one owing the obligation must be a consumer; and, (3) the one trying to collect the obligation must be a debt collector. *Reid v. Ayers*, 138 N.C. App. 261, 263, 531 S.E. 2d 231, 233 (2000) (citing N.C. Gen. Stat. 75-50(1)-(3)). Next, a plaintiff must make a showing of three generalized requirements of Section 75-1.1: (1) an unfair act (2) in or affecting commerce (3) proximately causing injury. *Id.* at 266, 235 (citing *First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 252, 507 S.E.2d 56, 63 (1988)).

In their Complaint, the Orbans claim BANA "has provided misleading and false information to Plaintiffs . . . and has knowingly, voluntarily and intentionally engaged in deceptive, false and misleading representation in violation of [N.C.]G.S. § 75-5." This claim fails as it relates to the assignment of the Deed of Trust and appointment of substitute trustees for the reasons previously discussed by the Court. To the extent this claim relates to the incorrect address provided by BANA in the response to the QWR, this claim also fails because the Orbans have failed to show how the alleged violation of Section 75-54 proximately resulted in any

---

[17] It should be noted that even though N.C. Gen. Stat. § 75-54 is strikingly similar to its federal counterpart, 15 U.S.C.A. § 1692(a) ("FDCPA"), North Carolina courts have made clear that "debt collector" under the state statute is given a broader definition than the federal statute. *Reid v. Ayers*, 138 N.C. App. 261, 265, 531 S.E. 2d 231, 234 (2000) (In this case, the North Carolina Court of Appeals held that attorneys collecting debts on behalf of clients were "debt collectors" under NCDCA even though the principal purpose of the law firm was not collection of debts for clients). This is because the NCDCA has no regulatory or primary purpose limitation as is found in FDCPA. *Id.*

injury. In the Notice of Default successfully mailed to BNYM, Mr. Orban stated that he was sending the Notice of Default to BNYM's actual address of record, One Wall St., NY, NY 10286. (Doc. 1-1, Pg. 24, Ex. E). Although inconvenient, Mr. Orban was able to obtain BNYM's correct address.

The Orbans' allegations in Claim Two against BANA under the FDCPA will be dismissed for those reasons previously stated. (*Supra* at 10-11.)

Therefore, the Orbans' allegations in Claim Two against BANA for violation of N.C.G.S. § 75-54 and the FDCPA are dismissed for failing to state a claim upon which relief may be granted.

### D. Fraud Claims

In North Carolina, the essential elements of a claim of fraud are: (1) false representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with the intent to deceive; (4) which does in fact deceive; (5) resulting damage to the injured party. *Olympus Managed Health Care, Inc. v. Am. Housecall Physicians, Inc.*, 662 F. Supp. 2d 427, 438 (W.D.N.C. 2009)(quoting *Rowan County Bd. Of Educ. V. U.S. Gypsum Co.,* 332 N.C. 1, 17, 418 S.E. 2d 648, 658 (1992)). Additionally, to allege a claim of fraud, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

The Orbans' claims of fraud refer to the foreclosure action as a "fraud on the Plaintiffs and on the Catawba County Superior Court." (Doc. 1-1, Pg. 7, Ph. 11). The Orbans also allege that a "fraudulent 'Assignment of Deed of Trust' was filed on behalf of MERS" by Mercedes Judilla who the Orbans claim is a "known robosigner." (Doc. 1-1, pg. 8, Ph. 12). The Orbans go on to claim that this filing "appears to have been done specifically so that one or more of the Defendants can institute another foreclosure action with some paperwork to supposedly back up

their claim of being the 'holder' of the note and/or deed of trust at issue." (Doc. 1-1, Pg. 8, Ph. 15).

These generalized statements and conclusions lacking factual support fail to allege with specificity the facts constituting the essential elements of fraud under North Carolina Law. Furthermore, the Court has previously discussed the transactions surrounding the foreclosure action and found no wrongdoing. (*Supra* at 8-9.) Finally, ignoring the deficiencies of the Orbans' allegations, an essential element of a claim of fraud is false representation of a *material* fact. The Fourth Circuit has held that a fraudulent signature does not constitute a material fact in a foreclosure document that is otherwise accurate. *Lembach v. Bierman*, 528 F. App'x 297, 303 (4th Cir. 2013)(discussing the materiality requirement under the FDCPA, "[b]ecause the signatures have no connection to the debt, and the [Plaintiffs] fail to show how the fraudulent signatures would mislead even the least sophisticated consumer, their claim fails.")(Citing *Harvey v. Great Seneca Financial Corp.*, 453 F. 3d 324, 332 (6th Cir. 2006).

Therefore, the Orbans' claims for fraud in Claim Two are dismissed for failing to comply with Fed. R. Civ. P. 9 and for failing to state a claim upon which relief may be granted.

### E. IIED/NIED Claim

In their Complaint, the Orbans request compensation for emotional distress caused by the alleged actions of the Defendants. (Doc. 1-1, Pg. 10, Ph. 22)

The essential elements of a claim for intentional infliction of emotional distress are (1) extreme and outrageous conduct by the defendant (2) which is intended to and does in fact cause (3) severe emotional distress. *Waddle v. Sparks*, 331 N.C. 73, 83, 414 S.E.2d 22, 27 (1992)(quoting *Dickens v. Puryear*, 302 N.C. 437, 276 S.E. 2d 325 (1981)). The essential elements of a claim for negligent infliction of emotional distress are: (1) the defendant

negligently engaged in conduct; 2) it was reasonably foreseeable that such conduct would cause the plaintiffs severe emotional distress; and, 3) the conduct did in fact cause the plaintiffs severe emotional distress. *Gardner v. Gardner*, 334 N.C. 662, 665-666, 435 S.E. 2d 324, 327 (1993) (quoting *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 935 S.E. 2d 85 (1990)).

The Orbans' emotional distress claims simply ask for "[c]ompensation for medical expenses due to emotional distress over the prospect of losing [their] home [they] built themselves in the amount of $27,479.93." (Doc. 1-1, Pg. 10, Ph. 22). The Complaint contains no allegations of extreme and outrageous conduct or negligent conduct on behalf of any of the Defendants and the facts presented do not support such an inference.

Therefore, those claims for IIED and NIED are dismissed for failure to state a claim upon which relief may be granted.

### F. Request for Injunctive Relief on Potential Future Foreclosure

The Orbans request for injunctive relief is not well taken. There is no pending foreclosure proceeding for this Court to enjoin in this case. Additionally, in North Carolina, N.C. Gen. Stat. § 45-21.34 provides the proper method for requesting equitable relief in a foreclosure proceeding. *Mosler ex rel. Simon v. Druid Hills Land Co., Inc.*, 199 N.C. App. 293, 296, 681 S.E. 2d 456, 458 (2009). Further, even if the Orbans had referred to Section 45-21.34, the Anti-Injunction Act, 28 U.S.C. § 2283, states that a federal court of the United States "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate judgments." The Orbans have made no argument as to why this Court should exercise its authority to grant such relief.

Therefore, the Orbans' claim for injunctive relief, asking this Court to grant a permanent injunction prohibiting the Defendants from "ever bringing another foreclosure action" on the note and deed of trust, is dismissed.

### G. Request for Punitive Damages

The Orbans' request for punitive damages is unsubstantiated. For punitive damages to be awarded, the statutory scheme in North Carolina contained in N.C. Gen. Stat. § 1D-15 requires a plaintiff to prove one of the following aggravating factors: (1) fraud; (2) malice; or, (3) willful or wanton conduct. As discussed previously, the Orbans' claims for fraud are insufficient and there has been no showing of malice or willful or wanton conduct by the Defendant.

## IV. PLAINTFFS' MOTION FOR SUMMARY JUDGMENT

The Defendants' pending Motions to Dismiss have prevented the parties from holding a Rule 26(f) conference and no scheduling order has been entered. Therefore, the discovery period has not commenced. Without discovery, the Defendants are unable to "present facts essential to justify" opposition to the summary judgment motion. Fed. R. Civ. P. 56(d). As such, Plaintiffs' Motion for Summary Judgment will be denied without prejudice under Fed. R. Civ. P. 56(d)(1).

## V. ORDER

**IT IS, THEREFORE, ORDERED THAT**

(1) Defendants Bank of America, N.A. and Bank of New York Mellons' Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) is **GRANTED IN PART AND DENIED IN PART.** The motion is **GRANTED** as to Plaintiffs' Claims in Count One and as to Plaintiffs' Claims in Count Two under 12 U.S.C. § 2605, 15 U.S.C. § 1692, N.C. Gen. Stat. § 75-54, and for Fraud. Defendant Bank of America, N.A.'s Motion to Dismiss is **DENIED** as to Plaintiffs' Claim in Count Two for Breach of Contract;

(2) Defendant Kerrie A. Verstrates' Motion to Dismiss under Fed. R. Civ. P. 12(b)(5) is **GRANTED**;

(3) **IT IS, THEREFORE, ORDERED** that Defendants Nationwide Trustee Services, Inc. and Kerrie A. Verstrates' Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) is **GRANTED**; and

(4) Plaintiffs' Motion for Summary Judgment is **DENIED WITHOUT PREJUDICE.**

Signed: November 19, 2014

Richard L. Voorhees
United States District Judge