**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**CIVIL ACTION NO. 5:12-CV-16**

| | |
|---|---|
| HAROL D N. ORBAN AND VICTORIA L. ORBAN ) ) ) **Plaintiffs,** ) ) v. ) ) NATIONWIDE TRUSTEE SERVICES, ) INC., KERRIE A. VERSTRATE, BANK OF ) AMERICA**,** AND BANK OF NEW YORK ) MELLON, SUCCESSOR TO JP MORGAN ) CHASE BANK, N.A., AS TRUSTEE FOR ) THE CERTIFICATE HOLDERS OF ) CWHEQ, INC. REVOLVING HOME ) EQUITY LOAN ASSET-BACKED NOTES, ) SERIES 2006-1 ) ) **Defendants.** ) ) | **ORDER** |

**BEFORE THE COURT** is Defendant Bank of America, N.A.'s ("BANA's") Motion for Summary Judgment (Doc. 47), to which Plaintiffs have responded (Doc. 50) after the Court issued a *Roseboro* notice, (Doc. 49). BANA filed a reply on August 7, 2015. (Doc. 54). On February 9, 2012, Defendants moved to dismiss the Complaint. (Doc. 2). On November 19, 2014, the Court dismissed Plaintiffs' claims for fraud and all alleged statutory violations. (Doc. 34). Plaintiffs moved to reconsider. (Doc. 40). On July 8, 2015, this Court issued an order granting in part and denying in part Plaintiffs' Motion to Reconsider. (Doc. 48). The Court ultimately held that "the only remaining claim before the Court is the loan modification theory advanced by Plaintiffs," (*id.* at 8), which is what BANA's Motion addresses.

In support of their claim for breach of contract, the Orbans allege that:

1

> In September 2009, Plaintiffs retained an attorney for the purpose of modifying and/or restricting their loans with Bank of America, and in April 2010, Bank of America approved a loan modification plan. However, in November 2010, said attorney filed a complaint with the North Carolina Commissioner of Banks due to the fact that Bank of America had reneged on their part of their agreement, and for unfair and deceptive trade practices. Plaintiffs could not afford to continue to pay the attorney and do not know what, if anything, was ever done with the complaint, and although Bank of America kept Plaintiffs first loan modification payment of $2,216.94 sent along with the full loan modification package, Bank of America refused to honor their part of the agreement.

(Doc. 1-1, at 8-9, ¶ 16). In the Order dated November 11, 2014, the Court noted that "[n]either the loan modification agreement nor the complaint with the North Carolina Commissioner of Banks are attached as exhibits to any filings and the Orbans provide no additional evidence in support of their allegations for breach of contract." (Doc. 34, at 13). However, the Court allowed the claim to go forward because "Rule 12(b)(6) is only concerned with the sufficiency of the complaint." (*Id.*). At this stage; however, Plaintiffs must do more than rely on their pleadings.

**I.    STANDARD OF REVIEW**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to support or oppose a summary judgment motion, a party is required to cite to "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials;" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *Anderson v. Liberty Lobby,* 477 U.S. 242 (1986) (applying former version of Rule 56); *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) (same). A genuine dispute exists only if "the evidence is such that a reasonable jury could return a verdict for the non-

moving party." *Anderson,* 477 U.S. at 248. In conducting its analysis, the Court views the evidence in the light most favorable to the non-moving party. *Celotex Corp.,* 477 U.S. at 325.

## II. STATEMENT OF FACTS[1]

On December 13, 2006, the Orbans executed a Home Equity Credit Line Agreement and Disclosure Statement (the "Note") in favor of Countrywide Home Loans, Inc. d/b/a America's Wholesale Lender ("Countrywide"), for $200,000. (Doc. 47, Ex. A-1). In connection with the Note, Plaintiffs executed a Deed of Trust on the real property located at 2320 Bluestone Court, Sherills Ford, North Carolina 28763-7286. (*Id.*, Ex. A-2) (the Note and Deed of Trust are collectively referred to as the "HELOC"). Plaintiffs also executed an Interest Only Fixed Rate Note (the "First Mortgage"), in favor of Countrywide, for $633,750.99. (*Id.*, Ex. A-3).

Countrywide Home Loans Servicing, LP ("CWHLS") serviced the HELOC on behalf of Countrywide. CWHLS later changed its name to BAC Home Loans Servicing, LP, which eventually merged with and into BANA. (Doc. 47-2, at ¶ 9). Shortly after closing, Countrywide sold the HELOC to the Bank of New York Mellon f/k/a The Bank of New York, as indenture trustee for the noteholders of CWHEQ, Inc., Revolving Home Equity Loan Asset Backed Notes, Series 2006-1, but BANA continued servicing the note on the Bank of New York Mellon's behalf. (*Id.* at ¶ 10). As the loan servicer, BANA was responsible for the day-to-day administration of the HELOC, including collecting and crediting monthly loan payments and communicating with the Orbans regarding their account. (*Id.* at ¶ 11).

On August 21, 2009, Harold Orban sent the Bank a letter indicating he had lost his job; was still unemployed; and was attempting to sell his home, unsuccessfully. (*Id.*, Ex. A-4) He stated that his only options were to sell the home; modify the loan; or to allow Countrywide to

---

[1] The Court notes that the Statement of Facts comes entirely from the exhibits attached to Defendant's Motion. As a further matter, the Court notes that Plaintiffs have failed to controvert any material fact advanced by Defendant.

3

take the home. (*Id.*). He concluded the letter by stating "I have exhausted my financial resources and can no longer continue to meet my monthly mortgage payment. I am desperate for a solution." (*Id.*)

On September 17, 2009, BANA received a letter from Jane Soboleski of Sobeleski Law, P.C. along with authorizations allowing her to obtain information regarding the HELOC and First Mortgage and to negotiate on the Orbans' behalf. (*Id.*, Ex. A-5). On October 8, 2009, BANA received an email from Soboleski's paralegal indicating that the Orbans would like to be considered for loan modifications and providing fourteen documents. (*Id.*, Ex. A-6). The Bank continued to communicate with Soboleski regarding Plaintiffs' request during the months of October and November. (*Id.* at ¶ 14).

On November 9, 2009, Harold Orban sent BANA a second letter, stating that:

> On August 21, 2008, we notified you of the hardship we are experiencing in our lives. Since then, we have heard nothing from BOA to resolve our situation. Nothing has changed to improve our circumstances and we are forced to make some tough decisions . . . .
>
> . . . . We have very little hopes that our home will sell in the near future . . . . Even if we were lucky enough to sell it, the sales price will never fulfill our total mortgage payoffs.
>
> We are at the point where we can no longer meet our financial obligations. Without knowing whether or not a loan modification will be granted, we have no assurance if we will be able to keep our home. . . .
>
> Please note, we have nearly exhausted all of our financial resources and will no long (*sic*) be sending our monthly mortgage payment to BOA.

In early December, a BANA representative spoke with Sobeleski and provided a verbal offer for a three-month trial period loan modification for the HELOC, which would have provided a reduced monthly payments with payments due on December 20, 2009, January 20, 2010, and February 20, 2010. (*Id.* at ¶¶ 16-17, Ex. A-9). Several days later, the same representative from BANA spoke with Sobeleski and extended the deadline for the three-month

trial period with payment due dates of January 20, 2010, February 20, 2010, and March 20, 2010. (*Id.* at Ex. A-9).

On December 15, 2009, Soboleski sent BANA a letter stating the terms of the oral offer and stating that "verbal contracts are not binding in North Carolina and . . . I could not advise my clients to accept such an offer without having something in writing." (*Id.*). Soboleski also expressed an interest in combining negotiations with the HELOC and the First Mortgage. (*Id.*). Soboleski indicated that she communicated the offer, but stated that the Orbans were waiting until they had "either an offer or denial on the [First Mortgage] account." (*Id.*).

The Orbans failed to make any required payments under the trial period modification for the HELOC. (*Id.* at ¶ 18). On January 27, 2010, a representative contacted Soboleski and advised her that a payment was not made on January 20, 2010. (*Id.*). Soboleski then requested an update on the First Mortgage and asked to be contacted when a decision was made as to that loan. (*Id.* at ¶ 18, Ex. A-10). BANA closed the loan modification review for the HELOC in February 2010 because the Orbans failed to make any payments under the trial period. (*Id.* at ¶ 19, Ex. A-11). On March 25, 2010, Soboleski sent BANA a letter indicating that "[o]n their HELOC the borrowers have declined the first modification proposal until their primary loan has been accepted for modification." (*Id.* at Ex. A-12).

Negotiations continued. On November 19, 2010, BANA sent the Orbans a letter titled "You're approved for a Home Equity Trial Modification." (*Id.* at Ex. A-13). The letter stated the following: "**To qualify for a modification of your home equity account, you must complete a three month trial period**. If you complete the trial period successfully, we will offer you a permanent modification of your home equity line of credit." (*Id.*). The Orbans did not make a payment under this plan. (*Id.* at ¶ 23).

5

On January 26, 2011, BANA sent the Orbans a letter indicating that their request for a modification of their HELOC was denied. (*Id.* at Ex. A-14). On July 14, 2011, BANA notified the Orbans that servicing of the HELOC was being transferred to Real Time Resolutions, Inc. on July 25, 2011. (*Id.* at Ex. A-15). BANA no longer has any interest in the HELOC or the First Mortgage. (*Id.* at ¶ 26).

## III. ANALYSIS

"Parties to a contract may agree to change its terms; but the new agreement, to be effective, must contain the elements necessary to the formation of a contract." *NRC Golf Course, LLC v. JMR Golf, LLC*, 731 S.E.2d 474, 480 (N.C. Ct. App. 2012). "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Supplee v. Miller-Motte Bus. Coll., Inc.*, 768 S.E.2d 582, 590 (N.C. Ct. App. 2015) (quoting *Branch v. High Rock Lake Realty, Inc.*, 565 S.E.2d 248, 252 (N.C. Ct. App. 2002).

"It is essential to the formation of any contract that there be 'mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds.'" *Creech v. Melnik*, 495 S.E.2d 907, 911-12 (N.C. 1998) (quoting *Snyder v. Freeman*, 266 S.E.2d 593, 602 (N.C. 1980)). Mutual assent is normally established by offer and acceptance. *Id.*

It is clear that while BANA made an offer for a trial period, said offer was never accepted. Accordingly, a modification never occurred. Therefore, summary judgment is appropriate.[2]

---

[2] Plaintiffs appear to dispute that BANA serviced the HELOC; however, all evidence shows the opposite. Plaintiffs other arguments are unavailing for the grounds stated in Defendant's Reply.

## IV. DECRETAL

**IT IS, THEREFORE, ORDERED THAT** BANA's Motion for Summary Judgment (Doc. 47) is **GRANTED.** The Clerk is directed to enter judgment in accordance with Rule 58.

Signed: August 27, 2015

Richard L. Voorhees
United States District Judge